IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CALVIN MARK ARMS,

                      Plaintiff,

    v.                                                          OPINION and ORDER

NANCY BERRYHILL,                                        18-cv-476-jdp
  Acting Commissioner, Social Security Administration,

                      Defendant.

---

Plaintiff Calvin Mark Arms seeks judicial review of a final decision of defendant Nancy Berryhill, Acting Commissioner of Social Security, denying his application for supplemental security income and disability insurance benefits for a four-year period between 2011 and 2015. The administrative law judge (ALJ) found that Arms had several severe impairments during the period in question, but concluded that Arms retained the residual functional capacity (RFC) to perform light work with several postural, environmental, mental, and movement restrictions. Within this RFC, the ALJ determined that Arms could meet the demands of both his past work and other jobs in the economy, so the ALJ found him not disabled.

On appeal, Arms contends that: (1) the restrictions included in the RFC failed to account for all of Arms's mental and hearing-related limitations and were inadequately explained; (2) there were unexplained discrepancies between the vocational expert's testimony and the Dictionary of Occupational Titles; and (3) the vocational expert's job-numbers testimony lacked a foundation and was not sufficiently reliable. The court concludes that a remand is necessary because the ALJ failed to adequately explain why he didn't include certain limitations in the RFC.

BACKGROUND

Arms first applied for disability benefits in 2007, but this appeal concerns an application that he submitted in 2013. It is Arms's second appeal of this application for benefits. In a March 24, 2016 decision, ALJ Michael Shaefer determined that Arms became disabled on March 1, 2015 and awarded benefits as of that date, but denied benefits for the period dating back to Arms's alleged disability onset date of June 30, 2011. R. 17–34.[1] Arms appealed that decision to this court. Before the case was fully briefed, the parties stipulated to remand the case to the agency with instructions that the ALJ should reevaluate the RFC finding, describe how the evidence supports the RFC finding, further evaluate Arms's symptoms and the opinion evidence, and, if warranted, obtain supplemental vocational expert testimony. *See Arms v. Colvin*, No. 16-cv-595-slc (W.D. Wis., Jan. 23, 2017). The same ALJ held another hearing on January 18, 2018, at which he heard testimony from Arms; an agency psychological expert, Dr. Ellen Rozenfeld; and a vocational expert, Dr. Jacquelyn Wenkman. He issued a new decision denying Arms's application for back benefits in April 2018.[2] R. 2204–18.

The ALJ found that Arms suffered from several severe impairments during the period in question: bilateral shoulder and left hip anthropathies, mood disorder/dysthymia, anxiety, personality/intermittent explosive disorders, and attention deficit hyperactivity/learning disorders. R. 2208. He found that Arms had "more than mild but no more than moderate

---

[1] Record cites are to the administrative transcript, located at Dkt. 8.

[2] In his second opinion, the ALJ asserts that, by granting the parties' joint stipulation to remand the case to the agency, the district court "implicitly accepted as accurate the prior findings of no listing level impairment." R. 2209. That is not correct. The court's order, R. 2340, vacated all findings in the ALJ's prior decision, without endorsing any aspect of the decision. The court typically does not review the underlying record when granting a joint stipulation to remand, so it does not assess the ALJ's original analysis.

2

limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself." R. 2210. In light of these and other limitations, the ALJ found that Arms maintained the RFC to perform light work with additional restrictions. Only some of those restrictions are relevant for the purposes of this decision. They include three restrictions that Arms says do not reflect the underlying medical evidence:

- Should avoid all exposure to very loud noise in the workplace, and is limited to work not requiring fine hearing capability or frequent verbal communication

- Limited to understanding, remembering and carrying out simple instructions and routine, repetitive tasks (at GED language and reasoning levels of two or below)

- Limited to only simple work-related decisions or judgments performed in an environment not involving fast paced production requirements and few if any changes in work duties or environment

R. 2210–11. Arms contends that two of the other restrictions in the RFC are inconsistent with the jobs that the ALJ found he could perform:

- Can frequently push or pull laterally or to the front but never overhead on any routine basis

- Can only occasionally reach about shoulder height

R. 2210.

Based on the RFC, the ALJ determined that, between 2011 and 2015, Arms could have performed his past relevant work as a product assembler (DOT 706.687-010), both as that work was actually performed by Arms in the past and as it is generally performed in the national economy. R. 2215. A claimant who can perform his past relevant work is not disabled as a matter of law. *See* 20 C.F.R. § 404.1560(b)(2). The ALJ also concluded based on testimony

3

from the vocational expert that there were other jobs that exist in significant numbers in the national economy that Arms could perform, such as packaging (DOT 920.687-090), assembly (DOT 737.684-022), or cleaning jobs (DOT 323.687-014). R. 2216. This finding was an independent basis for deeming Arms not disabled. *See* 20 C.F.R. § 404.1560(c).

In accordance with these findings, ALJ Shaefer denied Arms's application for benefits. This appeal followed.

ANALYSIS

The court reviews the final decision of an ALJ "to determine whether it applies the correct legal standard and is supported by substantial evidence." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The court reviews the record as a whole, but it cannot reconsider facts, weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Id.*

Arms contends that the ALJ erred by: (1) failing to include restrictions responsive to Arms's mental and hearing-related limitations in the RFC, or to explain why he declined to include such restrictions if he deemed them unnecessary; (2) failing to resolve conflicts between the vocational expert's testimony and the DOT; and (3) failing to adequately assess the accuracy of the job numbers provided by the vocational expect. The court agrees that the ALJ erred in formulating the RFC, so it will remand the case to the agency for further proceedings. But neither of the other asserted deficiencies in the ALJ's opinion provide a basis for remand.

**A. RFC deficiencies**

Arms contends that the ALJ's assessment of his RFC is flawed for two reasons: (1) the ALJ did not explain his decision to restrict Arms's exposure to "very loud" noise in the workplace while allowing that he could be exposed to noise arising to the "loud" level; and (2) he failed to incorporate all the findings of a medical expert, Dr. Rozenfeld, without explaining why. The court concludes that ALJ's handling of the first issue was adequate, but his failure to address the second issue requires a remand.

Regarding Arms's hearing-related limitations, the court notes as a preliminary matter that the hearing-related restriction in the hypothetical that the ALJ posed to the vocational expert does not match the hearing-related restriction in the RFC.[3] The RFC restricted Arms's exposure to "very loud" noise in the workplace, which means that the highest level of noise Arms was deemed able to tolerate was "loud." R. 2210. But the ALJ's hypothetical to the vocational expert limited Arms to "work environments with exposure to noise levels *no higher than the very loud level*." R. 2284–85 (emphasis added). This is a meaningless restriction, because there is no higher noise level than "very loud." Neither Arms nor the commissioner acknowledges this inconsistency. And ultimately, the ALJ's error is harmless because the vocational expert ended up testifying that Arms could perform his past relevant work as an assembler, which only requires exposure to noise at the "loud" level. *See* Selected Characteristics of Occupations, *supra*, at 281 (listing noise level of 4, or "loud," for DOT 706.687-010).

---

[3] The Department of Labor has set out a five-step scale for describing workplace noise levels, ranging from "very quiet" to "very loud." *See* U.S. Dep't of Labor, Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles, app. D-2 (4th rev. ed. 1993), *available at* http://onlineresources.wnylc.net/docs/SelectedCharacteristicsSearch121110.pdf.

5

Arms contends that the ALJ failed to explain why he found the restriction to "loud" work environments sufficient to address Arms's hearing limitation. Arms is correct that the ALJ did not explicitly connect the RFC restriction about noise to underlying record evidence in his opinion. But the ALJ noted that he was incorporating by reference certain aspects of his prior opinion. *See* R. 2213 ("I assess the same weight to those other opinions evaluated in the prior opinion and for the same reasons. The discussion of the opinions below in the prior opinion is incorporated herein by reference."). In his prior opinion, the ALJ noted opinion evidence from state agency medical consultant Dr. Mina Bacalla that Arms should "avoid[] concentrated exposure to very loud noise." R. 29; *see also* R. 203 (in her medical opinion, Bacalla stated that Arms "should avoid exposures to very loud noises"). The ALJ's decision to incorporate, rather than to repeat, his prior analysis on this point in the second opinion is not reversible error.

Arms's second contention is that the RFC did not incorporate the mental limitation findings of Dr. Rozenfeld, the state agency psychologist who testified at the hearing, even though the ALJ accorded "significant weight" to Rozenfeld's opinion. R. 2213. Specifically, Rozenfeld found that Arms had "moderate limits in focusing or concentrating for two-hour segments or completing the workday without extra mental breaks, but only mild limits in attending work or sustaining a routine." R. 2212. The ALJ said that his RFC assessment "does not necessarily adopt all of [Rozenfeld's] language in describing limits, but it does correspond to her testimony."[4] R. 2213. Later in the opinion, the ALJ stated that, although he based the

---

[4] Perhaps the ALJ intended to follow this statement with some sort of qualification of his reliance on Rozenfeld's testimony; the sentence immediately following is a fragment that reads: "The limit to". But the ALJ then moves onto the other medical opinions in the record, leaving the reader with the impression that the ALJ incorporated Rozenfeld's testimony into the RFC in full with only semantic changes.

mental RFC "to some extent upon earlier . . . reports from [state agency psychological consultants] Drs. Snyder and Gilyot-Montgomery, which are given some weight," his assessment was "primarily based upon the extensive testimony and proposed restrictions provided by the impartial medical expert, Dr. Rozenfeld." R. 2215.

But the RFC did not incorporate Rozenfeld's finding that Arms had moderate limitations in focusing or concentrating for two-hour segments and completing the workday without extra mental breaks. For example, the RFC did not say that Arms requires additional breaks or will be off-task some of the time. Nor did the ALJ explain why he believed such restrictions were unnecessary, or how the other restrictions in the RFC were otherwise sufficient to address these limitations. This failure to account for evidence that supported further restrictions requires remand. *See, e.g.*, *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016); *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

The commissioner argues that the ALJ accommodated Arms's mental health limitations by "adopting the opinions of Drs. Montgomery-Gilyot and Snyder." Dkt. 17, at 13. She notes that ALJs can account for mental health limitations by adopting a physician's "translation" of those limitations into specific functional restrictions. This argument fails for two reasons. First, this explanation is inconsistent with the ALJ's own account of his reasoning, which makes clear that the RFC was drawn "primarily" from Rozenfeld's testimony and was meant to "correspond to" the limitations she identified. R. 2215, 2213. If the ALJ decided to discount aspects of Rozenfeld's testimony in favor of Montgomery-Gilyot or Snyder's findings, he did not say so. Second, like Rozenfeld, Montgomery-Gilyot and Snyder found that Arms would be moderately limited in his ability to "maintain attention and concentration for extended periods," and to "complete a normal workday and workweek without interruptions from psychologically based

7

symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." R. 162, 207. And in the narrative portion of her evaluation form, Gilyot-Montgomery opined that Arms would be "capable of sustaining concentration, persistence & pace . . . *given routine breaks*." R. 163 (emphasis added).

The ALJ failed to reconcile his decision to rely on an expert opinion with his omission of a key part of that opinion from his RFC assessment. For that reason, the ALJ's decision is not supported by substantial evidence and must be remanded.

**B. Conflicts between the vocational expert's testimony and the DOT**

Arms contends that the ALJ failed to resolve multiple conflicts between the hypothetical question that the ALJ posed to the vocational expert and the DOT and its companion publication, the Selected Characteristics of Occupations (SCO). Social Security Ruling 00-4p places an affirmative duty on the ALJ to ask whether vocational expert testimony conflicts with the DOT, and, if it "appears to conflict," to elicit "a reasonable explanation for the apparent conflict." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (citing SSR 00-4p, at 5). Arms says that the ALJ failed to do so here, but the court sees no error in the ALJ's analysis.

Arms says that there are three conflicts between the DOT and the restrictions in the hypothetical question posed to the vocational expert (which the ALJ adopted in relevant part in formulating the RFC). Specifically, he points to: (1) a conflict between the DOT and the hypothetical's restrictions related to work pace and workplace changes; (2) a conflict between the SCO's definition of "reaching" and the reaching-related restrictions in the hypothetical; and (3) a conflict between the work-duty changes restriction and the DOT's definition of "reasoning level 2."

8

1. **DOT's silence on pace and workplace changes**

Arms says that the ALJ failed to resolve a conflict between the DOT and the hypothetical's restrictions to "no fast-paced production requirements" and "few, if any, changes in the work duty." R. 2285. He cites an exchange between the ALJ and the vocational expert in which the vocational expert acknowledges that "things like fast pace, few changes et cetera aren't really addressed by the DOT." R. 2288. Arms contends that the DOT's silence on a restriction is the same as a conflict between the DOT and a restriction. But that interpretation drains the word 'conflict' of all meaning. *See Collins v. Berryhill*, 743 F. App'x 21, 26 (7th Cir. 2018), *reh'g denied* (Sept. 24, 2018) ("Because the DOT does not specify whether jobs allow changing from sitting to standing, the VE's testimony supplemented the DOT and did not conflict with it."). And even if it were somehow a conflict, the ALJ obtained a reasonable explanation for it when the vocational expert testified that she was basing her testimony on her "experience of seeing the jobs." R. 2288.

2. **SCO's definition of "reaching"**

Arms contends that the hypothetical's reaching-related restrictions were inconsistent with the SCO's definition of "reaching." In his hypothetical to the vocational expert, the ALJ limited the claimant as follows:

> [T]his person can push and pull with the bilateral upper extremities only frequently. But frequently laterally to the front, but never overhead, so never no pushing or pulling overhead. . . . This person is limited to no more than occasional reaching with the bilateral upper extremities above shoulder height, so no limits on reaching laterally or to the front but no more than occasionally above shoulder heights bilaterally.

R. 2284. The vocational expert relied on this hypothetical to testify that someone with such restrictions would be able to engage in Arms's past relevant work as a product assembler, a

9

position that requires frequent reaching. Arms argues that the hypothetical's restrictions on reaching above shoulder height and pushing or pulling overhead conflicts with the SCO, which defines reaching as "extending hand(s) and arm(s) *in any direction*." Selected Characteristics of Occupations, *supra*, app. C-3 (emphasis added).

But there is no evidence—in the DOT, SCO, or elsewhere—that work as a product assembler requires frequent *overhead* reaching. Absent some evidence that an overhead-reaching restriction would disqualify an individual from a significant number of the product assembler jobs in the national economy, the court declines Arms's invitation to characterize this as a conflict. This conclusion is consistent with the Seventh Circuit's analysis in *Ketelboeter v. Astrue*, 550 F.3d 620 (7th Cir. 2008), where the court discerned no conflict between the DOT's description of "price marker," which requires frequent reaching, and the claimant's overhead-reaching restriction. 550 F.3d at 625–26. *See also Seamon v. Astrue*, 364 F. App'x 243, 249 (7th Cir. 2010) ("[E]ven though the brusher position may require significant *lateral* reaching, there is no evidence that [the] position would require frequent *overhead* reaching." (emphasis in original)); *Slonaker v. Colvin*, No. 3:12-CV-304, 2013 WL 4788132, at *11 (N.D. Ind. Sept. 9, 2013) ("Slonaker argues that the 'frequent reaching' requirement for the shipping clerk position is at odds with the 'no overhead reaching' restriction in Slonaker's RFC. . . . Slonaker provides no evidence that the frequent reaching required of shipping clerks would necessary include any overhead reaching.").

### 3. Inconsistency between work-duty changes and reasoning level 2

Arms contends that there is an internal conflict between the hypothetical's restriction to "few, if any, changes in the work duty" and its restriction to jobs with a GED reasoning level

of 2.[5] R. 2285. According to the DOT, those with a GED reasoning level of 2 can "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." U.S. Dep't of Labor, Dictionary of Occupational Titles, App. C, Components of the Definition Trailer.[6] Arms contends that the restriction to few work-duty changes more closely aligns with GED reasoning level 1. *See id.* ("Deal with standardized situations with occasional or no variables in or from these situations encountered on the job."). But the court need not determine whether a restriction to "few, if any, changes in the work duty" conflicts with GED reasoning level 2 because the vocational expert testified that someone with the restrictions in the hypothetical could perform work as a cleaner, which the DOT classifies as having a reasoning level of 1. *See id.*, Cleaner, Housekeeping, 323.687-014. So the dispute is ultimately immaterial.

For those reasons, none of the purported conflicts between the vocational expert's testimony and the DOT provide a basis for remand.

**C. Reliability of vocational expert's method**

Arms contends that the ALJ erred by not adequately assessing the accuracy of the job numbers provided by the vocational expert and incorporated into the ALJ's reasoning at step five. The vocational expert testified that there are approximately 162,000 packaging jobs, 196,000 assembly jobs, and 444,000 cleaning jobs in the national economy. R. 2287. Arms argues that there is "no indication of how the vocational expert created her estimates." Dkt. 13,

---

[5] The ALJ defined GED language and reasoning level 2 by reference to Appendix C of the Dictionary of Occupational Titles (DOT). R. 2210 n.1.

[6] Available at https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM.

at 44. That is not accurate; the vocational expert testified that she derived the job numbers by comparing Occupational Employment Quarterly (a private publication) and the Department of Labor's statistics. R. 2292–93. Specifically, she went "through the titles, the job, not the DOT numbers in the Department of Labor data," and then "add[ed] those numbers up. If that addition turn[ed] out to be the same as what the Employment Quarterly report says . . . then [she would] use that as an example. If there's a gre[at] difference like 200 or . . . more, between those two gauges, then [she wouldn't] use that as an example." R. 2293–94.

This explanation is imprecise, but it generally conveys the method used. Arms says that the ALJ erred by "not assessing the reliability of the numbers" in Occupational Employment Quarterly "or determining the reliability of Dr. W[e]nkman's numbers derived from that publication." Dkt. 13, at 41. But the ALJ did assess the reliability of Occupational Employment Quarterly numbers by confirming that they derived from Department of Labor data. He and the vocational expert had the following exchange:

> Q. And the Occupational Quarterly is a private publication, correct?
>
> A. Yes, by the U.S. Department of Labor.
>
> Q. And do you understand that they get their job instance numbers that they report from the Department of Labor as well?
>
> A. Yes, it's a census.

R. 2293. The ALJ was required to take administrative notice of Department of Labor data. *See* 20 C.F.R. § 404.1566(d). And the Occupational Employment Quarterly is based on these same data and is "a source on which VEs customarily rely." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009). By eliciting this testimony about the method and source of the vocational expert's estimates, the ALJ met his burden of showing that the job-number estimates were "the

12

product of a reliable method." *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). Arms does not explain with any specificity why the method used was unreliable or what further questions the ALJ should have posed to the vocational expert. So the court will not remand the case on that basis.

ORDER

IT IS ORDERED that the decision of Nancy A. Berryhill, Acting Commissioner of Social Security, denying plaintiff Calvin Mark Arms's applications for disability insurance benefits is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Entered March 26, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge